UNITED STATES of America, Appellee,

v.

Kenneth James LUNDIEN, Appellant.

No. 84–5224.

United States Court of Appeals, Fourth Circuit.

Argued April 5, 1985.

Decided Aug. 7, 1985.

---

**3.** Section 8–104(e) provides:

F. Andrew Carroll, III, Alexandria, Va., for appellant.

William G. Otis, Asst. U.S. Atty., Alexandria, Va. (Elsie L. Munsell, U.S. Atty., Alexandria, Va., Deborah Keith Meyers, Sp. Asst. U.S. Atty., Alexandria, Va., on brief), for appellee.

Before SPROUSE and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.

SPROUSE, Circuit Judge:

Kenneth James Lundien pled guilty in the district court to assaulting a federal officer and kidnapping in violation of 18 U.S.C. §§ 111, 1201(a)(1) (1982). The district court initially sentenced him to concurrent sentences of ten years on each count but five days later, upon motion by the government, amended the sentence on the kidnapping count by increasing it to twenty years. Lundien appeals, contending that because he had started to serve his sentence the enhancement of his sentence by

resentencing violated his rights under the Double Jeopardy Clause of the fifth amendment. We affirm.

Lundien escaped from the Arizona State Prison in January 1984. During his flight from confinement, Lundien shot an FBI agent and commandeered an automobile, forcing its occupant to drive with him from Alexandria, Virginia, to New York City. Lundien was apprehended in March 1984 and indicted in the district court for the Eastern District of Virginia for assaulting a federal officer (Count 1), in violation of 18 U.S.C. § 111 (1982), and for kidnapping (Count 2), in violation of 18 U.S.C. § 1201(a)(1) (1982). Lundien entered into a plea agreement under Fed.R.Crim.P. 11(e)(1)(B), pursuant to which he pled guilty to both counts and the government agreed to recommend that the sentences run concurrently. In the course of accepting Lundien's guilty pleas, the district court indicated that it would accept the recommendation.

At sentencing on July 6, 1984, the district court sentenced Lundien to serve ten years on each count, with sentences to run consecutively. Immediately following the court's pronouncement, defense counsel reminded the court that the plea agreement stated that the sentences were to run concurrently. The court then stated:

Alright, fine. Then I modify the sentence to let the ten year term on the kidnapping run concurrently with the assaulting a Federal officer.

The sentencing hearing concluded without further discussion. On that same day, the court entered a Judgment and Commitment Order imposing a ten-year sentence on each count, to run concurrently. Lundien was remanded to the custody of the Attorney General and was held in the District of Columbia jail, pending assignment to a federal penitentiary, at least until after the subsequent hearing at which his sentence was amended.

On July 9, 1984, the government filed a "Motion for Temporary Stay of Judgment and Commitment Order and for Clarification of Sentencing." The motion noted that the sentence originally pronounced by the district court at the hearing indicated the court's intention to impose a total term of twenty years, and that the ten-year sentence actually imposed might have represented an oversight. The motion suggested that if the court's intention was in fact to impose a total confinement of twenty years, the sentence on Count 2 should be increased to twenty years, running concurrently with the sentence on Count 1. On July 11, 1984, after hearing argument on the motion, the district court accepted the government's suggestion. The court stated:

At the time I sentenced Mr. Lundien last Friday, I made a mistake, and I want the record to be perfectly clear. I don't want to pass the buck to anyone else. At the time I sentenced him, I intended for him to serve 20 years. I sentenced him to 10 years on Count 1 and 10 years on Count 2, and while there was a plea agreement in the file, I did not read it before I came in and sentenced, and I was not aware that there had been an agreement for the sentences to run concurrently. It was not in the presentence report. But I should have made inquiry before I sentenced so that that would be clarified, and I didn't do it. But it was my intention for the Defendant Lundien to serve 20 years, and that was why I gave him 10 years on each count.

In order to now bring that into being, I resentence him, and sentence him to 10 years on Count 1 and 20 years on Count 2, and Count 2 is to run concurrently with Count 1.

Under our cases it is not entirely clear whether Lundien's five days of incarceration in the District of Columbia jail awaiting transfer to a federal penitentiary represents the kind of formal commencement of sentence that barred resentencing under our previous double jeopardy holdings. *Neidinger v. United States,* 647 F.2d 408, 410 & n. 1 (4th Cir.), *cert. denied,* 454 U.S. 859, 102 S.Ct. 311, 70 L.Ed.2d 155 (1981); *see* 18 U.S.C. § 3568 (1982). We do not view this question as bearing on our deci-

sion, however, because, even if he had commenced service of his sentence, it is our view that the Double Jeopardy Clause was not violated by the enhancement on resentencing.

■ The general rule has long been recognized that a trial court has the power to recall a defendant who had already been sentenced and to impose a sentence different from that originally imposed. *Bassett v. United States*, 76 U.S. (9 Wall.) 38, 19 L.Ed. 548 (1969); *Ex parte Lange*, 85 U.S. (18 Wall.) 163, 167, 21 L.Ed. 872 (1874); *United States v. Benz*, 282 U.S. 304, 306–07, 51 S.Ct. 113, 114, 75 L.Ed. 354 (1931); *Cisson v. United States*, 37 F.2d 330, 332 (4th Cir.1930); *Acme Poultry Corp. v. United States*, 146 F.2d 738, 739 (4th Cir. 1944), *cert. denied*, 324 U.S. 860, 65 S.Ct. 865, 89 L.Ed. 1417 (1945); *Williams v. United States*, 422 F.2d 1318, 1318 (5th Cir.1970); *United States v. Busic*, 639 F.2d 940, 948 (3d Cir.), *cert. denied*, 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981); *Neidinger v. United States*, 647 F.2d 408, 410 (4th Cir.), *cert. denied*, 454 U.S. 859, 102 S.Ct. 311, 70 L.Ed.2d 155 (1981). As we said in an earlier case:

> The power of the judge to modify or set aside judgments during the term is an ancient one and founded upon the soundest reasons. Upon more mature consideration he may, and frequently does, decide that a sentence imposed during the term should be lightened or increased. He may learn additional facts about a case which show the original sentence to be entirely inadequate or unreasonably harsh; and, if the mere incorporation in the sentence of [a provision that the defendant enter immediately upon service of the sentence] is to deprive him of further power over the case, the greatest embarrassments in the administration of justice and the greatest hardships may result, for the judge would be powerless to reduce a sentence which he thought excessive, or grant a new trial to a prisoner shown to be innocent, even though such prisoner were in the courtroom and actually at the bar of the court. He would likewise be powerless to increase punishment, although it should develop that the sentence originally imposed was entirely inadequate.

*Cisson*, 37 F.2d at 332.

■ At the same time we have repeatedly stated that a "limitation upon this power is that the sentence may not be increased if a fine has been paid or if the defendant has entered upon the service of a term of imprisonment." *Acme Poultry*, 146 F.2d at 739; *Neidinger*, 647 F.2d at 410; *Cisson*, 37 F.2d at 332; *see Benz*, 282 U.S. at 307, 51 S.Ct. at 114. Although we have not had occasion to reverse a trial court's enhancement of sentence for having been ordered after commencement of service, we have recognized the rule in affirming the trial court's enhancement of sentence prior to commencement of service by the defendant. *Neidinger*, 647 F.2d at 410; *Acme Poultry*, 146 F.2d at 739. Despite occasional statements that the basis for this limitation is that commencement of service deprives the trial court of the power to resentence, *Cisson*, 37 F.2d at 332, the clearly established rule is that the limitation rests on the Double Jeopardy Clause. As the Supreme Court said in *Benz*:

> The distinction that the court during the same term may amend a sentence so as to mitigate the punishment, but not so as to increase it, is not based upon the ground that the court has lost control of the judgment in the latter case, but upon the ground that to increase the penalty is to subject the defendant to double punishment for the same offense in violation of the 5th Amendment to the Constitution. . . .

*Benz*, 282 U.S. at 307, 51 S.Ct. at 114; *Acme Poultry*, 146 F.2d at 739. Lundien bases his hopes for reversal on this rule, contending that the Double Jeopardy Clause precluded enhancement of his sentence.

Lundien's argument, however, suffers fatally from the Supreme Court's decision in *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), which expressly disavows the rationale on

which our former double jeopardy rule in this resentencing area was based. The seminal authority for the proposition that the Double Jeopardy Clause bars enhancement of the sentence after commencement of service is the Supreme Court's decision in *Ex parte Lange,* 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1874). *See Benz,* 304 U.S. at 307, 51 S.Ct. at 114; *United States v. Turner,* 518 F.2d 14, 15 (7th Cir.1975); *United States v. Adams,* 362 F.2d 210, 211 (6th Cir.1966); *Tatum v. United States,* 310 F.2d 854, 855 (D.C.Cir.1962); *Acme Poultry,* 146 F.2d at 739; *Wilson v. Bell,* 137 F.2d 716, 720 (6th Cir.1943). These courts reasoned that the imposition of a sentence had the same effect as a jury verdict after trial and that the sentence imposed constituted a final judgment of acquittal as to any greater sentence. The conclusion followed that the substitution of a greater sentence violated the Double Jeopardy Clause as multiple punishment for the same offense. *See United States v. Jefferson,* 714 F.2d 689, 706 (7th Cir.1983).

In *DiFrancesco* the Supreme Court considered the constitutionality of the government's right to appeal the sentence imposed on a "dangerous special offender" under the Organized Crime Control Act of 1970. 18 U.S.C. §§ 3575(e), (f), 3576 (1982) (repealed effective Nov. 1, 1986, Pub.L. No. 98–473, § 212(a)(2), 98 Stat.1987). In reversing the circuit court's holding that this part of the Act violated the Double Jeopardy Clause, the Court demolished the foundation upon which the courts had uniformly relied to find double jeopardy in the enhancement of a sentence after commencement of service. The Court succinctly stated, over vigorous dissents, that pronouncement of a sentence does not possess the finality of a verdict of acquittal for double jeopardy purposes and that imposition of a particular sentence is not equivalent to a judgment of acquittal as to all greater sentences. 449 U.S. at 133–36, 101 S.Ct. at 435–37. The Court disavowed the "general application" of the *Benz* dictum that the Double Jeopardy Clause precludes a trial court from *"increas[ing]* a sentence, even though the increase is effectuated during the same court session, if the defendant has begun service of his sentence." 449 U.S. at 138–39, 101 S.Ct. at 438 (emphasis in original). The Court noted that "the dictum's source, *Ex parte Lange,* states no such principle," 449 U.S. at 138, 438, and it expressly restricted the holding in *Lange* and the dictum in *Benz* to "*Lange's* specific context." 449 U.S. at 139, 101 S.Ct. at 438.

■ The instant case does not fall within "*Lange's* specific context." In *Lange* the defendant was sentenced to payment of a fine and imprisonment, when the statute involved permitted the punishments only in the alternative. After he had paid the fine in full and served five days of the prison term, the defendant was resentenced to serve in full the original term of imprisonment. The Court found the Double Jeopardy Clause violated, as the defendant "had fully suffered one of the alternative punishments to which the law alone subjected him, [so] the power of the court to punish further was gone" and the resentencing constituted double punishment for the same offense. In the instant case Lundien plainly had not fully suffered a lawful punishment for his crimes, having served only five days prior to resentencing. After *DiFrancesco,* therefore, Lundien's double jeopardy claim appears to be without merit.

Our analysis cannot end there, however, as the opinion in *DiFrancesco* is not entirely clear as to the constitutional protections available to a defendant against enhancement of his sentence after commencement of service. The Court expressly "venture[d] no comment as to [the] limitation" observed by federal courts precluding such enhancement. 449 U.S. at 134, 101 S.Ct. at 435. Although the Court did not specify the constitutional basis for such limitation, it did suggest the interest protected by the limitation:

Although it might be argued that the defendant perceives the length of his sentence as finally determined when he begins to serve it, and that the trial judge should be prohibited from thereafter increasing the sentence, that argu-

ment has no force where, as in the dangerous special offender statute, Congress has specifically provided that the sentence is subject to appeal. Under such circumstances there can be no expectation of finality in the original sentence.

449 U.S. at 139, 101 S.Ct. at 438 (citations omitted). It is conceivable that the Court by this language intended to leave open the possibility of applying the double jeopardy bar where Congress had not expressly provided for enhancing a sentence, as under the "dangerous special offender" provisions of the Organized Crime Control Act of 1970. Such a proposition appears unsupported, however, in light of the Court's plain statement that the case relied upon as the source of the double jeopardy restriction on sentence enhancement "states no such principle." 449 U.S. at 138, 101 S.Ct. at 438. It seems more likely that any constitutional source for protection of the defendant's interest in the finality of his sentence must be found in the fifth amendment's guarantee of due process.

In resting its reversal of the trial court's sentence enhancement on the Double Jeopardy Clause, the Supreme Court in *Lange* found it unnecessary to decide whether the Due Process Clause would also support reversal:

It is not necessary in this case to insist that other cases besides those involving life or limb are positively covered by the language of this amendment; or that when a party has had a fair trial before a competent court and jury, and has been convicted, that any excess of punishment deprives him of liberty or property without due course of law. On the other hand, it would seem to be equally difficult to maintain, after what we have said of the inflexible rules of the common law against a person being twice punished for the same offense, that such second punishment as is pronounced in this case is not a violation of that provision of the Constitution.

*Ex parte Lange,* 85 U.S. (18 Wall.) at 170. Since the Supreme Court in *DiFrancesco,*

however, seems to have removed the supports from the double jeopardy theory, we think it appropriate to address the impact of the Due Process Clause on sentence enhancement. Even casual observation suggests that there must be some limitation on the power of the trial court to enhance punishment by resentencing after the defendant's commencement of service. As the court indicated in *Lange,* sentencing more often than not has a greater effect on a defendant than the trial itself.

For of what avail is the constitutional protection against more than one trial if there can be any number of sentences pronounced on the same verdict? Why is it that, having once been tried and found guilty, he can never be tried again for that offense? Manifestly it is not the danger or jeopardy of being a second time found guilty. It is the punishment that would legally follow the second conviction which is the real danger guarded against by the Constitution.

*Ex parte Lange,* 85 U.S. (18 Wall.) at 173. One can readily hypothesize grossly unfair sentences that might result if there were no limit on trial courts' power to enhance a sentence after commencement. *See, e.g., Ex parte Lange,* 85 U.S. (18 Wall.) at 168.

We think that under *Lange* and *DiFrancesco* such undesirable results can, and should, be prevented by balancing the competing factors in each case under the Due Process Clause of the fifth amendment. The now well-developed principle of constitutional due process fairness should apply to the sentencing phase of a criminal trial as well as to the trial itself. *Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977) (plurality opinion); *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *North Carolina v. Pearce,* 395 U.S. 711, 723–26, 89 S.Ct. 2072, 2079–81, 23 L.Ed.2d 656 (1969); *United States v. Lemon,* 723 F.2d 922, 933 (D.C.Cir.1983); *Katz v. King,* 627 F.2d 568, 576 (1st Cir.1980); *Ashe v. North Carolina,* 586 F.2d 334, 336 (4th Cir.1978), *cert. denied,* 441 U.S. 966, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979). Al-

though the parameters of due process to be accorded at sentencing are not firmly fixed, it is beyond doubt that a sentence enhanced, whether before or after commencement of service, because of the vindictiveness or other plainly improper motive of the trial court would be fundamentally unfair and would deny the defendant due process. *See North Carolina v. Pearce,* 395 U.S. at 723–25, 89 S.Ct. at 2079–80. More important to the instant case, due process may also be denied when a sentence is enhanced after the defendant has served so much of his sentence that his expectations as to its finality have crystallized and it would be fundamentally unfair to defeat them. As the First Circuit has stated the principle:

> [T]he power of a sentencing court to correct even a statutorily invalid sentence must be subject to some temporal limit. When a prisoner first commences to serve his sentence, especially if it involves a long prison term as here, the prospect of release on parole or otherwise may seem but a dimly perceived, largely unreal hope. As the months and years pass, however, the date of that prospect must assume a real and psychologically critical importance. The prisoner may be aided in enduring his confinement and coping with the prison regime by the knowledge that with good behavior release on parole or release outright will be achieved on a date certain. After a substantial period of time, therefore, it might be fundamentally unfair, and thus violative of due process for a court to alter even an illegal sentence in a way which frustrates a prisoner's expectations by postponing his parole eligibility or release date far beyond that originally set.

*Breest v. Helgemore,* 579 F.2d 95, 101 (1st Cir.) (affirming trial court's increase of minimum sentence from eighteen to forty years after defendant served fourteen days), *cert. denied,* 439 U.S. 933, 99 S.Ct. 327, 58 L.Ed.2d 329 (1978).

■ We cannot see that the resentencing of Lundien was either fundamentally unfair or unfair because Lundien had gained an indefeasible expectation of finality in his sentence. The district court inadvertently erred in carrying into effect its clearly stated and obvious intention to impose on Lundien a term of twenty years because of an oversight in correcting its initial sentence to conform with a plea agreement which was not called to its attention in the presentence report. The record contains no hint of any improper motive on the part of the trial judge in the resentencing. Even crediting the argument that merely commencing to serve the sentence gives a defendant some expectations as to its finality, Lundien had served only five days of an expected sentence of ten years and he had not even reached his final prison destination. On these facts we cannot say that Lundien's expectations as to the final length of his sentence had crystallized to the extent that it would be unfair to defeat them by allowing the district court to correct an inadvertent mistake and effectuate the sentence that it plainly intended originally to impose.

■ Finally we reject Lundien's argument that the government denied him due process by styling its motion a "Clarification" of sentence. Given the context of the sentencing hearing and the district court's summary halving of its initial sentence in order to accomodate a plea agreement it had not anticipated, the sentence was unclear, so styling the motion a "Clarification" was not inappropriate. In any event the content of the government's motion gave Lundien detailed notice as to what the government sought to accomplish.

For the reasons stated in this opinion, the judgment of the district court is hereby

AFFIRMED.