**UNITED STATES of America**

v.

**James L. HALLAM, Bambi Hallam.**

**No. SCr. 89–24.**

United States District Court,
N.D. Indiana,
South Bend Division.

Aug. 11, 1989.

Rick L. Jancha, Asst. U.S. Atty., South Bend, Ind., for U.S.

Charles A. Asher, South Bend, Ind., for James L. Hallam and Bambi Hallam.

## MEMORANDUM AND ORDER

MILLER, District Judge.

Defendants James and Bambi Hallam, who were sentenced on August 11, 1989 to terms of imprisonment on their guilty pleas to possession with intent to distribute cocaine, invite reconsideration of their sentences. They contend that their sentences under the Sentencing Reform Act of 1984 improperly considered quantities of cocaine that they voluntarily disclosed to investigating authorities, contaminating the sentencing calculations under the Sentencing Guidelines.

### I. Facts

Nicholaus Hicks is Mrs. Hallam's cousin.[1] After years without contact with the Hallams, Mr. Hicks renewed his relationship with his cousin by taking Mr. and Mrs. Hallam to dinner and discussing future plans (unrelated to drugs) with them. Mr. Hicks eventually asked permission to store some belongings in the Hallam home. After the Hallams agreed and accepted the items, they discovered that the belongings included impressive amounts of cocaine that Mr. Hicks apparently held for sale.

The Hallams were unhappy to have the cocaine on their premises, but feared Mr. Hicks too much to take action to remove it. They asked Mr. Hicks to get rid of it, but had difficulty reaching him. They remained in possession of the cocaine, storing a considerable amount of it at the home of a neighbor, Ms. Garrison.

The situation began to resolve itself on March 3, 1989 when authorities apprehended Mr. Hicks' girlfriend, Karen Carr, in Silver Lake, Indiana. Ms. Carr

---

1. Mr. Hicks also is a co-defendant who is yet to be sentenced in this case. The facts set forth herein are drawn from the guilty plea dialogues with Mr. and Mrs. Hallam, the Hallams' presentence reports, and evidence adduced at the hearing on the Hallams' motion to reconsider. The court recognizes that Mr. Hicks has had no opportunity to controvert any of the evidence giving rise to these findings and, accordingly, these findings will not be considered in Mr. Hicks' sentencing.

apparently began cooperating with investigators; in the course of her cooperation, she informed DEA Special Agent Ehrsam that Mr. Hicks stored his cocaine at the Hallams' home, though some was at the Garrison residence, too. Ms. Carr told Special Agent Ehrsam that she could make a telephone call to the Hallams and obtain a kilogram of cocaine. She made the call and told James Hallam that she would be by to pick up a kilogram of cocaine. At about 1:30 a.m. on March 4, Bambi Hallam went to the Garrison residence and obtained one kilogram of cocaine. Mrs. Hallam testified that she was happy to be getting rid of it.

Meanwhile, Special Agent Ehrsam had called Special Agent Roger Allen to arrange assistance for surveillance and possible execution of a search warrant. Special Agent Allen arranged a team of twelve to sixteen state, local, and federal officers to be present near the Hallam and Garrison homes. Ms. Carr had told Special Agent Ehrsam that firearms were located in the Hallam home.

Ms. Carr and Special Agent Ehrsam arrived at the Hallam home at about 3:00 a.m. Mrs. Hallam admitted Ms. Carr and gave her a package containing one kilogram of cocaine. Outside the home, the agents conducted a field test and determined that the substance was cocaine. The agents returned to the Hallam home and knocked. Mrs. Hallam opened the door, something was said about police, and the door began to close. The agents forced the door open, ordered the Hallams to the floor, and searched for weapons. Eight agents entered the home; their guns were drawn. The Hallams were then placed on a couch. Mrs. Hallam was clad only in a tank top and underpants, although agents eventually gave her a pair of pants.

The Hallams spoke to each other in the agents' presence; Mr. Hallam reminded his wife of his having told her they would get caught. Special Agent Allen had to tell the Hallams to quiet down and listen as he informed him of their rights. He told them

of their rights to remain silent, to counsel, to terminate questioning, and that anything they said might be used against them in a court of law. He asked whether they understood their rights, and they answered affirmatively. He asked whether they wished to answer questions, and they again answered affirmatively. He told the Hallams that if they cooperated with the agents, their cooperation would be made known to the United States Attorney's Office, but that no further promises could be made. The Hallams eagerly agreed to cooperate and told the agents about the additional cocaine at the Garrison residence. Mrs. Hallam testified that she and her husband believed that the information they provided the agents would not be used against them.

Even as the questioning of the Hallams continued, other agents went to the Garrison home and obtained Ms. Garrison's consent to search. That search ultimately disclosed an additional quantity of cocaine.

The Hallams were not arrested that night. Pursuant to instructions, Mrs. Hallam later contacted the federal prosecutor.

The Hallams eventually were indicted with Mr. Hicks in a multiple-count indictment. Mrs. Hallam was charged in four counts, and Mr. Hallam was charged in five counts. Both Hallams entered into plea agreements whereby they pleaded guilty to one count of possession with intent to distribute, pledged their cooperation, and received limited immunity from future charges and dismissal of the remaining charges against them. The plea agreements contained the following tentative [2] stipulations concerning the operation of the Sentencing Guidelines:

1. The offense level for this offense (involving 1000 grams of cocaine) is Level 26;

2. Pursuant to Guideline 1B1.3(a), there is additional relevant conduct (involving 5000 grams of cocaine) which increases the total amount involved to

---

2. The parties conceded in the plea agreement that their stipulated calculations did not bind

the court. *See* Sentencing Guidelines, § 6B1.4.

6000 grams. The offense level for 6000 grams of cocaine is Level 32. The plea agreement further stated the parties' belief that both defendants were entitled to a four-level reduction due to their minimal involvement in the offense,[3] Sentencing Guidelines § 3B1.2(a), that both defendants were entitled to a two-level reduction for their acceptance of responsibility, § 3E1.1, and that both defendants were in Criminal History Category I. The government also agreed to file a motion of substantial assistance to authorities, allowing departure from the guideline range, § 5K1.1, and imposition of a sentence below the statutory minimum, 18 U.S.C. § 3553(e).

At sentencing, the court concluded that Mrs. Hallam's guideline range was seventy-eight to ninety-seven months and that Mr. Hallam's guideline range was sixty-three to seventy-eight months.[4] The court evaluated the Hallams' assistance to authorities pursuant to § 5K1.1 and decided, in the exercise of discretion, to depart downward by seven offense levels. The court imposed sentences at the bottom of the resultant guideline ranges. Mrs. Hallam was sentenced to thirty-seven months imprisonment and Mr. Hallam was sentenced to thirty months imprisonment.

On September 6, the Hallams filed a motion to reconsider the sentencing decisions. They argue that the six-level increase from level 26 to level 32 reflecting the additional cocaine found in the Garrison residence, was impermissible in light of § 1B1.8 of the Sentencing Guidelines, which provides in pertinent part:

(a) Where a defendant agrees to cooperate with the government by providing information concerning the unlawful activities of others, and the government agrees that self-incriminating information so provided will not be used against the defendant, then such infor-

mation shall not be used in determining the applicable guideline range, except as provided in the agreement.

(b) The provisions of subsection (a) shall not be applied to restrict the use of information:

(1) known to the government prior to entering into the cooperation agreement . . .

The government opposes the Hallams' motion, arguing that (1) the court lacks jurisdiction to modify the sentences, (2) the government did not agree that self-incriminating information would not be used against the defendants, and (3) the government knew of the presence of the additional cocaine at the Garrison home before the Hallams began their cooperation. For the reasons that follow, the court agrees with each of the government's positions.

## II. Jurisdiction

The Hallams argue that the court has authority to change a sentence after formal pronouncement outside of the scope of Rule 35 of the Federal Rules of Criminal Procedure. In support of this assertion, the defendants offer the analysis of *United States v. Lundien*, 769 F.2d 981 (4th Cir. 1985), *cert. denied* 474 U.S. 1064, 106 S.Ct. 815, 88 L.Ed.2d 789 (1986), and authorities cited therein. *Lundien*, however, fails to provide the authority for this court to change the sentence imposed on the defendants, particularly true in light of the amendment to Fed.R.Crim.P. 35, effective November 1, 1987, which greatly limited the ability of a district court to alter a sentence. This court, therefore, has no jurisdiction to modify the defendants' sentences.

As amended effective November 1, 1987, Rule 35 allows for correction of a pronounced sentence only upon remand or when the government brings changed cir-

---

**3.** Mrs. Hallam ultimately received only a two-level reduction in light of her participation in retrieving the cocaine from the Garrison residence. Mr. Hallam received the four-level reduction. This difference accounts for the disparity in the Hallams' sentences.

**4.** The court's sentencing memorandum with respect to Mrs. Hallam is attached hereto as an Appendix. Mr. Hallam's sentencing memorandum was identical except insofar as he was awarded a four-level reduction for his level of participation, as distinct from Mrs. Hallam's two-level reduction. *See* note 3, *supra*.

cumstances to the court's attention.[5] The amendment substantially decreased the authority of the district court to alter sentences after pronouncement. Previously, district courts had discretion to correct an illegal sentence or reduce a sentence within 120 days of final disposition.[6] Now, a district court may only correct a sentence in two narrowly drawn instances and no longer has the authority to reduce a sentence under other circumstances. 3 C. Wright, *Federal Practice & Procedure* Criminal 2d § 581, at 81 (1989).

*United States v. Lundien* was decided under the law as it existed before the Sentencing Reform Act of 1984. This authority is not binding on the court in the Hallams' case. Since the Hallams' offenses occurred after November 1, 1987, their sentences are governed by Rule 35 as amended. Sentencing Act of 1987, Pub.L. No. 100–182, sec. 2(a), 101 Stat. 1266; *United States v. Plain*, 856 F.2d 913, 914–915 n. 2 (7th Cir.1988); *United States v. Twomey*, 845 F.2d 1132, 1135 (1st Cir.1988); *United States v. Rewald*, 835 F.2d 215, 216 (9th Cir.1987).

*United States v. Lundien*, upon which the Hallams rely, was an unusual case. The sentencing judge had pronounced an aggregate sentence of twenty years, consisting of two consecutive ten-year terms.

When it was pointed out at the sentencing hearing that the plea agreement required concurrent sentencing, the judge modified the sentence to provide for concurrent ten-year terms. Five days later, while still being held in jail awaiting the designation of a penitentiary, the defendant was returned to court, where the judge explained that his intention had been to impose an aggregate twenty-year sentence. In accordance with that intent, the judge modified the sentence on the second count to twenty years. The defendant appealed, claiming that the sentencing enhancement deprived him of due process and violated the Double Jeopardy Clause. The Fourth Circuit rejected his arguments.

*Lundien* dealt solely with the increasing of a sentence already pronounced, a topic on which Rule 35 then was silent. The holding of *Lundien* offers the Hallams no assistance; their claims do not involve the constitutionality of a second sentencing producing a greater sentence. The language of *Lundien* offers the Hallams encouragement, however: "The general rule has long been recognized that a trial court has the power to recall a defendant who had already been sentenced to impose a sentence different from that originally imposed." 769 F.2d at 984. None of the many cases cited for that proposition in-

---

**5.** The current text of Rule 35 provides:

(a) Correction of a Sentence on Remand. The court shall correct a sentence that is determined on appeal under 18 U.S.C. 3742 to have been imposed in violation of law, to have been as a result of an incorrect application of sentencing guidelines, or to be unreasonable, upon remand of the case to the court—

(1) for imposition of a sentence in accord with the findings of the court of appeals; or

(2) for further sentencing proceedings if, after such proceedings, the court determines that the original sentence was incorrect.

(b) Correction of Sentence for Changed Circumstances. The court, on motion of the Government, may within one year after the imposition of a sentence, lower a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense, in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of Title 28, United States Code. The court's authority to lower a sentence under this subdivision includes the au-

thority to lower such sentence to a level below that established by statute as a minimum sentence.

**6.** The text of Rule 35 before the amendment of November 1, 1987 read as follows:

(a) Correction of Sentence. The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence.

(b) Reduction of Sentence. The court may reduce a sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding a judgment of conviction. The court may also reduce a sentence upon revocation of probation as provided by law. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.

volved reduction of a sentence after Rule 35 came into being in 1966.[7]

Since 1966, Rule 35 has governed reduction of sentences. *See generally Pollitte v. United States*, 852 F.2d 924 (7th Cir. 1988); *United States v. Smith*, 839 F.2d 175, 182 n. 9 and 10 (3d Cir.1988). Under Rule 35, circuit courts consistently have held that unless the sentence is illegal, *see* former Rule 35(a), the district court has no inherent power to sentence a defendant at any time following the formal pronouncement of a sentence. *Gaertner v. United States*, 763 F.2d 787 (7th Cir.), *cert. denied* 474 U.S. 1009, 106 S.Ct. 535, 88 L.Ed.2d 466 (1985) (no jurisdiction to modify sentence after expiration of 120 days); *see also United States v. Minor*, 846 F.2d 1184, 1187 (9th Cir.1988); *United States v. Henry*, 709 F.2d 298, 307–308, 317 (5th Cir. 1983).

The Seventh Circuit's opinion in *United States v. Spilotro*, 884 F.2d 1003 (7th Cir. 1989), speaks contrary to the defendants' contention that a trial court has the authority to change a sentence outside the restrictions of former Rule 35. In *Spilotro*, the court held that the lower court failed to comply with the requirements of former Rule 35 in altering a previously imposed sentence. Accordingly, the circuit court granted the government's writ of mandamus, vacated the change of sentence imposed by the lower court, and restored the defendant's original sentence. If sentencing courts have a basis aside from Rule 35 upon which to correct or alter a sentence, certainly the court in *Spilotro* would have so found.

The court does not view the 1987 amendment of Rule 35 as expanding its jurisdiction to modify a sentence. As befits a system of narrow sentencing discretion and appellate review of sentences, the 1987 amendment sharply restricted sentencing courts' discretion to modify a sentence already imposed by limiting it to two situations.[8] *See United States v. Smith*, 839 F.2d at 180.

Absent any inherent authority to modify the Hallams' sentences, this court must work within the confines of present Rule 35 in reviewing the defendants' motion. Neither of the two instances in which a court may correct a sentence under Rule 35 exists here. To date, the Hallams have not appealed their sentences nor has the government made any effort to demonstrate changed circumstances. The evidence presented at the September 14 hearing demonstrates no "subsequent, substantial assistance" rendered to the government beyond that originally given and tak-

7. The *Lundien* court cited three post–1966 cases, each of which involved increasing sentences. In *Williams v. United States*, 422 F.2d 1318 (5th Cir.1970), the court upheld a modification of a sentence, originally pronounced as involved concurrent terms, to one involving consecutive terms. Similarly, in *Neidinger v. United States*, 647 F.2d 408 (4th Cir.), *cert. denied* 454 U.S. 859, 102 S.Ct. 311, 70 L.Ed.2d 155 (1981), the district court had sentenced the defendant to thirty days work release confinement followed by two years probation. When the court learned that the work release facility would not accept the defendant for a thirty-day assignment, the court vacated the original sentence, placed the defendant on two years probation, requiring sixty days of work release in a halfway house as a condition of probation. The district court was affirmed. Finally, in *United States v. Busic*, 639 F.2d 940 (3rd Cir.), *cert. denied* 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981), the court addressed the permissibility of enhanced resentencing on remaining counts after conviction on some counts have been vacated on appeal. *See also United States v. Shue*, 825 F.2d 1111 (7th

Cir.), *cert. denied* 484 U.S. 956, 108 S.Ct. 351, 98 L.Ed.2d 376 (1987).

As to the constitutionality of increasing a sentence already pronounced, *see also Pennsylvania v. Goldhammer*, 474 U.S. 28, 106 S.Ct. 353, 88 L.Ed.2d 183 (1985); *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980); *United States v. Bentley*, 850 F.2d 327 (7th Cir.), *cert. denied* — U.S. ——, 109 S.Ct. 501, 102 L.Ed.2d 537 (1988) (correcting illegal sentence under former Rule 35(a)).

8. Arguably, district courts necessarily must retain authority to modify some sentences pronounced in error, such as a sentence in excess of that permitted by the statute of conviction or to correct clerical error, as where the judgment does not reflect the sentence pronounced in court. To permit such errors to be addressed only on appeal would constitute a stark waste of time and judicial resources unwarranted by the purposes of the Sentencing Reform Act of 1984. The Hallams present no such circumstances, however, so the court need not address the permissibility of such modification in the face of present Rule 35.

en into account during the sentencing of the Hallams.

Accordingly, this court lacks a jurisdictional basis for any correction of the Hallams' sentences pursuant to Rule 35 of the Federal Rules of Criminal Procedure.

### III. Applicability of § 1B1.8

Even if such authority existed, however, the court would not exercise that authority here because the Hallams have not shown that any error occurred in their sentencings.

The Hallams argue that § 1B1.8 should have prohibited the court's consideration, as relevant conduct, of the additional 5,000 grams of cocaine they stored for Mr. Hicks at the Garrison residence. They contend that they believed they were acting pursuant to precisely the sort of agreement contemplated by § 1B1.8 and now are being penalized on the basis of their cooperation.

■ The court cannot agree with their position. Section 1B1.8 requires two facets to the agreement: the defendant must agree to cooperate, and the government must agree not to use the products of that cooperation against the defendant. The facts of this case disclose nothing remotely resembling a governmental agreement not to use the information. The Hallams analogize to then-Justice Rehnquist's statement in the Fourth Amendment area that "arcane distinctions developed in property and tort law ... ought not to control", *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978), and argue that an enforceable contract under principles of contract law should not be required for operation of § 1B1.8. The court concurs that technical contract analysis is inappropriate, but the requisite agreement cannot be implied from a vacuum.

Even if it is assumed that a law enforcement agent can bind the government under § 1B1.8 (an issue the court need not reach), Special Agent Allen said nothing from which the court could infer that the government agreed not to use the Hallams' information against them. He told the Hallams that anything they said could be used against them, that if they cooperated their cooperation would be communicated to the U.S. Attorney's office, but that no further promises could be made. Viewed objectively, these statements can only be viewed as specifically declining to offer the sort of agreement contemplated by § 1B1.8. At a minimum, something in the record must demonstrate a governmental intent to agree not to use self-incriminating information against a cooperating defendant. Nothing in this record suggests such an intent.

■ The court also agrees with the government that if it were found that Special Agent Allen bound the government to an agreement contemplated by § 1B1.8, the first exception to that guideline section would preclude its application: before the Hallams provided their self-incriminatory information, the government knew, based on Ms. Carr's statements, that cocaine was stored at the Garrison house. The agents already had surrounded the Garrison home.

The Guidelines do not specify the certainty with which the government must already know what the defendant has disclosed, and the circumstances of this case do not require the court to venture such a definition. It is enough to say that the government need not believe its information beyond a reasonable doubt, the standard that inspires the jury instructions on accomplice testimony to which the Hallams' counsel directed the court. Here, the government had knowledge of the cocaine storage sufficient to warrant the intrusion into the Hallams' home (where Ms. Carr said some of the cocaine was) and to surround the Garrison home (where Ms. Carr said more of the cocaine was). The Hallams corroborated the information the agents had concerning the whereabouts of the remainder of the cocaine, but did not tell the agents anything they did not already know.

### IV. Conclusion

Based on the foregoing, the court concludes that it lacks authority to modify the sentences heretofore imposed and, further, that the defendants have not shown that

their sentences were based on impermissible information. Accordingly, the defendants' motion for reconsideration of their sentences must be, and hereby is, DENIED.

The defendants are ordered to surrender themselves for commencement of their sentences, in accordance with the order of August 11, 1989, by 9:00 a.m. on October 16, 1989.

SO ORDERED.

## APPENDIX A

### SENTENCING MEMORANDUM

Bambi Linn Hallam, a 26–year–old mother of two, has tendered a guilty plea to one count of possession with intent to distribute cocaine. As part of her plea agreement, Mrs. Hallam pledges her cooperation with the government and the government promises her limited immunity from future prosecution, promises dismissal of the remaining three counts against her, and agrees to file a notice of substantial assistance to authorities and a motion empowering the court to impose a sentence below the statutory minimum.

Mrs. Hallam and her husband/co-defendant allowed Mrs. Hallam's cousin, Nicholaus Hicks, to store six kilograms of cocaine, first at the Hallams' house and then at the house of a neighbor. On at least one occasion (the government contends there were more), Mrs. Hallam retrieved a kilogram of cocaine from the neighbor's house in the middle of the night for Mr. Hicks' girlfriend. Federal agents moved in immediately after that delivery and the Hallams immediately began cooperation with the government.

Because the offense occurred on March 4, 1989, the Sentencing Guidelines promulgated by the United States Sentencing Commission govern Mrs. Hallam's sentencing. A presentence report was prepared and submitted to the government and to the defense. Neither side submitted written objections to the report within the time allowed by the court's order with respect to presentence procedures. Accordingly, the court adopts as its own findings paragraphs 1–78 of the presentence report.

Pursuant to those findings, because Mrs. Hallam (1) was a minor participant in a crime involving six kilograms of cocaine, (2) has clearly accepted personal responsibility for her involvement, and (3) has no prior criminal record, her guideline range is imprisonment from seventy-eight to ninety-seven months and a fine of from $12,500.00 to the statutory maximum of $2,000,000.00. The statute requires a period of supervised release of at least four years, 21 U.S.C. § 841(a)(1)(B)(ii), and the Guidelines provide a maximum period of supervised release of five years. Guidelines, § 5D3.2(a). Mrs. Hallam is ineligible for probation. 18 U.S.C. § 3561(a)(2); Guidelines, § 5B1.1(b)(2). She also faces a mandatory $50.00 special assessment. 18 U.S.C. § 3013.

Unlike most cases under the Guidelines, the issue before the court does not require resolution of factual or legal disputes that affect the applicable guideline range or selection of a sentence within the guideline range. Here, the court must evaluate whether to depart from the guideline range on the basis of Mrs. Hallam's assistance to authorities. Section 5K1.1 of the Guidelines authorizes, but does not require, *see* *United States v. Wright*, 873 F.2d 437, 442 (1st Cir.1989) (Breyer, J.), such departure:

§ 5K1.1 *Substantial Assistance to Authorities* (Policy Statement)

Upon motion of the government stating that the defendant has made a good faith effort to provide substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

(a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following conduct:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the defendant's assistance.

The Application Notes indicate that this consideration is independent of the reduction for acceptance of responsibility provided in § 3E1.1 and that substantial weight should be given to the government's assessment of the defendant's assistance.

The government also has filed a motion empowering the court to disregard the statutory five-year minimum pursuant to 18 U.S.C. § 3553(e), which provides,

Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

28 U.S.C. § 994(n) provides:

The Commission shall assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed, including a sentence that is lower than that established by statute as a minimum sentence, to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.

Sections 3553(e), 994(n), and 5K1.1 plainly are designed to work together. *See United States v. Campbell*, 704 F.Supp.

661 (E.D.Va.1989). Departure under § 5K1.1 appears to rest almost wholly within the sentencing court's discretion.[1] *United States v. Rojas*, 868 F.2d 1409, 1410 (5th Cir.1989) ("A claim that the district court refused to depart from the guidelines and imposed a lawful sentence provides no ground for relief."); *cf. United States v. Wright*, 873 F.2d at 442 ("[W]e need not decide whether, or under what circumstances, a sentencing court's decision *not* to depart might constitute an incorrect application of the Guidelines."). The extent of departure, if any, also appears to rest in the sentencing court's discretion with due regard to the case's facts and circumstances. *See United States v. Campbell*, 704 F.Supp. 661 (E.D.Va.1989) (guidelines called for minimum of seventy-eight months, court imposed fourteen months).

With all of the foregoing in mind, the court called upon counsel to apprise the court of the extent of Mrs. Hallam's assistance to authorities. Based on the government's response, the court concludes that Mrs. Hallam's assistance has been significant and it contributed greatly to Nicholaus Hicks' decision to plead guilty. Her cooperation led to the success in prosecution of one person.

In light of Mrs. Hallam's assistance, the court concludes pursuant to 18 U.S.C. § 3553(e) that a sentence below the statutory minimum should be imposed and concludes pursuant to § 5K1.1 of the Sentencing Guidelines that the court should depart downward to a sentencing range seven levels lower than that for which she is qualified. The sentencing range for offense level 21 calls for imprisonment for between thirty-seven and forty-six months. Because of her substantial assistance to authorities, because her incarceration will cause an undue hardship to her two small children, and because her role in the of-

---

**1.** Whether the discretion to trigger departure is or may be vested solely with the prosecution is a matter that has divided the courts, *compare United States v. Huerta*, 878 F.2d 89 (2nd Cir. 1989) (18 U.S.C. § 3553(e) requires government motion), *with United States v. White*, 869 F.2d 822, 829 (5th Cir.1989) (§ 5K1.1 "obviously does not preclude a district court from entertaining a defendant's showing that the government is refusing to recognize such substantial assistance"), *and United States v. Coleman*, 707 F.Supp. 1101 (W.D.Mo.1989) (court granted defendants' motion to require government to file motions under § 3553(e) and § 5K1.1), but need not be considered here.

fense was not that of a "street dealer", the court deems it appropriate to impose the minimum sentence within that guideline range, or thirty-seven months.

Accordingly, the court now accepts the defendant's plea of guilty and adjudges that pursuant to the Sentencing Reform Act of 1984, the defendant, Bambi Linn Hallam, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of thirty-seven (37) months. Upon release from imprisonment, the defendant shall be placed on supervised release for a term of four (4) years. While on supervised release, the defendant shall not commit another federal, state, or local crime, shall comply with the thirteen standard conditions of supervised release set forth in § 5B1.4(a) of the Sentencing Guidelines, shall not possess a firearm or other dangerous weapon, and shall perform ten hours of community service each month as arranged by the United States Probation Office.

Because the defendant is unable to pay a fine in light of pending forfeiture proceedings and family needs, no fine is imposed. Guidelines, § 5E4.2(d)(2), (3). It is further ordered that the defendant shall pay to the United States a special assessment of $50.00, which shall be due immediately.

Without objection from the government, the court finds, by clear and convincing evidence, that the defendant poses no risk of flight or danger to the community or any person and affords the defendant the privilege of voluntary surrender. Accordingly, the defendant is ordered to surrender herself to the United States Marshal before 9:00 a.m. on September 11, 1989.

The court orders the presentence report, exclusive of any recommendation, sealed and made a part of the record herein in the event of any appellate review.

SO ORDERED.

ENTERED: August 11, 1989