**Morgan BELILES, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

**No. 79A02–9508–PC–481.**

Court of Appeals of Indiana.

April 15, 1996.

---

Caroline B. Briggs, Flora, for appellant.

Pamela Carter, Attorney General, Lisa M. Paunicka, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

ROBERTSON, Judge.

Morgan Beliles appeals the denial of his petition for post-conviction relief from the sentence imposed upon his conviction of Dealing Cocaine, a class B felony. Beliles raises two issues, neither of which require reversal.

### FACTS

The facts in the light most favorable to the decision below reveal that Beliles was convicted and sentenced under the terms of a negotiated, written, plea agreement. Under the agreement, Beliles was to receive the maximum, twenty-year sentence with six years suspended (fourteen years executed). However, an error was made in the preparation of the sentencing order issued on December 20, 1990. The sentencing order stated that Beliles received a twenty-year sentence with fourteen years suspended (six years executed). Beliles was committed to the Department of Correction under this incorrect sentencing order.

Less than a month later, on January 18, 1991, a corrected sentencing order reflecting the actual sentence to be imposed under the agreement was entered by the properly appointed Judge Pro Tem of the trial court. However, no notice of the correction was given to either Beliles or his attorney. Moreover, no corrected abstract of the judgment was prepared nor was the corrected sentencing order/judgment forwarded to the Department of Correction.

Accordingly, as Beliles had been committed under the incorrect sentencing order, he originally expected to be released on December 8, 1993, reflecting Indiana's standard 2 for 1 good time credit where a 6 year executed sentence will be served in 3 years. In 1993, Beliles was placed in a work release center in anticipation of his release from prison. Beliles had secured employment after his anticipated release date and also had made plans regarding housing and the purchase of a used car.

However, on September 1, 1993, the regular, sitting trial judge (the successor to the judge who had presided over the trial court

during the earlier proceedings in this case) entered a new abstract of judgment reflecting Beliles' actual sentence of an executed term of fourteen years. The Department of Correction was notified; and Beliles was picked up at the work release center, handcuffed, shackled, and taken to the State Farm to serve the rest of his fourteen year sentence.

## DECISION

 The post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993). In reviewing the judgment of a post-conviction court, the appellate court considers only the evidence and reasonable inferences supporting the judgment. *Id.* The post-conviction court is the sole judge of the evidence and the credibility of the witnesses. *Id.* A post-conviction petitioner who has been denied relief is in the position of one who has received a negative judgment and will only obtain reversal where the evidence is undisputed and leads inevitably to a conclusion opposite that of the post-conviction court. *Schiro v. State*, 533 N.E.2d 1201, 1204 (Ind.1989), *cert. denied*, 493 U.S. 910, 110 S.Ct. 268, 107 L.Ed.2d 218. A post-conviction petitioner will not carry his burden unless he can affirmatively demonstrate that his substantive rights have been prejudiced. *See White v. State*, 497 N.E.2d 893, 905, 906 (Ind.1986).

### I.

*Validity of Corrected Sentencing Order*

 A *nunc pro tunc* entry is an entry made now of something which was actually done previously to have effect as of the former date. *Schiro v. State*, 451 N.E.2d 1047, 1056 (Ind.1983), *cert. denied*, 464 U.S. 1003, 104 S.Ct. 510, 78 L.Ed.2d 699. Such entries may serve to change or supplement an entry in the trial court's order book and must be based upon written memoranda, notes, or other memorials which must 1) be found in the record of the case; 2) be required by law to be kept; 3) show action taken or orders or rulings made by the court and 4) exist in the records of the court contemporaneous with or

preceding the date of the action described. *Id.* The rules governing the entry of *nunc pro tunc* orders are relaxed when the trial court merely corrects a clerical error. *Stowers v. State*, 266 Ind. 403, 363 N.E.2d 978, 983 (1977). The trial court may correct a clerical mistake in a judgment order upon its own initiative and after such notice, if any, as the court orders, at any time before the record is filed on appeal. Ind.Trial Rule 60(A).

 In the present case, the record affirmatively demonstrates that Beliles was to be sentenced to an executed term of fourteen years under the terms of his plea agreement and that the original sentencing order simply contained a clerical error. The properly appointed Judge Pro Tem's entry correcting the sentencing order in January of 1991, as well as the trial court's correction of the abstract of judgment in 1993, reflect the actual terms of the written plea agreement upon which Beliles was sentenced. Therefore, the corrections of the clerical errors were appropriate *nunc pro tunc* entries and we find no error.

 Beliles argues that the correction of his sentence violates the Due Process clause of the United States Constitution based upon dicta in *Breest v. Helgemoe*, 579 F.2d 95 (1st Cir.1978), *cert. denied*, 439 U.S. 933, 99 S.Ct. 327, 58 L.Ed.2d 329, which reads as follows:

[T]he power of a sentencing court to correct even a statutorily invalid sentence must be subject to some temporal limit. When a prisoner first commences to serve his sentence, especially if it involves a long prison term as here, the prospect of release on parole or otherwise may seem but a dimly perceived, largely unreal hope. As the months and years pass, however, the date of that prospect must assume a real and psychologically critical importance.... After a substantial period of time, therefore, it might be fundamentally unfair, and thus violative of due process for a court to alter even an illegal sentence in a way which frustrates a prisoner's expectations by postponing his parole eligibility or release date far beyond that originally set.

*Id.* at 101. However, the First Circuit has clarified *Breest* by limiting due process violations to cases where the prisoner's expectations of being released have been realized and the correction of the sentence results in a tangible detriment or concrete injury. *Lerner v. Gill*, 751 F.2d 450, 459 (1st Cir. 1985), *cert. denied*, 472 U.S. 1010, 105 S.Ct. 2709, 86 L.Ed.2d 724; *Littlefield v. Caton*, 856 F.2d 344, 348 (1st Cir.1988). The *Littlefield* court held that the revocation of illegally awarded "good time credits" which had accrued over a period of nine years did not violate the due process rights of a prisoner who had not yet been released, noting:

> [W]e have made clear that misdirection of this sort must 'involve[ ] prejudice and harm beyond frustrated expectations' to be constitutionally redressable. The mere passage of time—even, as here, the passage of many years—does not per se import the existence of such prejudice and harm. Something more—something specific, some concrete injury—must be shown.

*Id.* at 348 (quoting *Lerner*, 751 F.2d at 459). The *Littlefield* and *Lerner* courts were influenced by the fact that, although the correction of the sentences left the prisoners with dashed hopes, they were essentially "no worse off than ... had the error not been made." *Littlefield*, 856 F.2d at 349; *Lerner*, 751 F.2d at 459.

The *Lerner* case is factually similar to the present case. The prisoner in *Lerner* had been advised by the Rhode Island Department of Correction that he would be eligible for parole after having served ten years. Based on this information, the Department had transferred Lerner to a minimum security prison and granted him work release and furlough privileges. *Id.* at 453. Lerner's family moved to Rhode Island and his parents invested in a business to provide him with work upon his release. After Lerner had served ten years and had twice unsuccessfully applied for parole, the Attorney General of Rhode Island declared that Lerner would have to serve a minimum of twenty years before he would be eligible for parole. As noted above, the First Circuit Court of Appeals held that Lerner's due process rights had not been violated because, "[w]hile Lerner's expectations were raised and then thwarted, he did not suffer other, more tangible prejudice." 751 F.2d at 459. Moreover, the *Lerner* court was influenced by:

> the concern that a rigid application of the due process clause would interfere with Rhode Island's ability to interpret and apply its laws correctly. The [Lerner] Court ... expressed a reluctance to erect a constitutional impediment ... absent a showing of prejudice and harm beyond frustrated expectations.

*DeWitt v. Ventetoulo*, 803 F.Supp. 580, 584 (D.R.I.1992) (Due process was violated where defendant had already been released from prison when his life sentence was reimposed), *affirmed*, 6 F.3d 32, *cert. denied*, —— U.S. ——, 114 S.Ct. 1542, 128 L.Ed.2d 193.

In the present case, Beliles' sentence was corrected before he had completed the incorrectly imposed six year sentence and before he had been released from prison. We agree with the First Circuit that a prisoner's due process rights are not violated merely by the dashed hopes attendant in the correction of a sentence which delays the prisoner's expected release date. Therefore, we find no due process violation here.

In *Woods v. State*, 583 N.E.2d 1211 (Ind. 1992), our supreme court reached a result consistent with the approach of the First Circuit set out above. In *Woods*, the prisoner had been free pending the resolution of his appeal. After Woods' conviction had been affirmed by our court and certified to the trial court, the trial court delayed 5½ years before ordering that Woods' sentence be executed. In ordering that Woods be discharged from incarceration, our supreme court noted that:

> Through no fault of appellant, the State delayed the commencement of his sentence for more than five and one-half (5½) years. Thus ... the sword of Damocles dangled over the head of appellant for that five and one-half (5½) year period. We hold that the trial court in fact lost jurisdiction over appellant by reason of this undue delay and that the motion for discharge should have been granted. ... we now hold a

court loses jurisdiction if it does not act within a reasonable time after the certification of the affirmance of a conviction.

\* \* \* \* \* \*

... the execution of the sentence in fact does violate the principles of equity and the requirements of prompt action on the part of the State in discharging its duties in criminal cases.

583 N.E.2d at 1212, 1213. One of equitable factors weighed by the *Woods* court was the fact that, during the 5½ year delay, the defendant had stayed out of trouble, had supported his children, and had developed health problems. *Id.* at 1213.

The present case is distinguishable from *Woods* because the sword here is double-edged and cuts the other way. Woods had been free and had lived a law-abiding life during the period in which the sword hung over his head—time which he could have spent serving his sentence. On the other hand, in the present case, the "sword" which hung over Beliles' head while he was in prison properly serving his sentence consisted of the chance that the error in the sentencing order would be corrected depriving him of the windfall of a shorter executed sentence than the one he had bargained for under his plea agreement. As discussed above, Beliles has not shown prejudice beyond frustrated expectations. Therefore, the equitable principles that operated to effect the prisoner's discharge in *Woods* have not been triggered here.

█ Beliles next argues that the trial court's failure to comply with the procedures prescribed by Ind.Code 35-38-1-15 & 16 for the correction of an erroneous sentence are fatal to the effectiveness of the correction of his sentence and require that he be discharged. We disagree.

█ The procedures to correct an erroneous sentence under I.C. 35-38-1-15 should be limited to those instances where the sentence is erroneous on its face; that is, to those fundamental sentencing errors where

sentences have been entered in violation of express statutory authority or an erroneous interpretation of a statutory penalty provision. *Gaddie v. State,* 566 N.E.2d 535, 537 (Ind.1991). The next code section, I.C. 35-38-1-16, provides that whenever a court corrects an erroneous sentence or modifies a previously imposed sentence and the convicted person is incarcerated, the trial court shall immediately send certified copies of the corrected or modified sentence to the Department of Correction.

In the present case, the original, incorrect sentencing order was not in violation of express statutory authority or otherwise illegal. It merely contained a clerical error such that it did not reflect the sentence that should have been imposed under the plea agreement. Accordingly, the trial court was not required to use the procedures contemplated by I.C. 35-38-1-15 and could appropriately correct the clerical error in the judgment by *nunc pro tunc* entry as discussed above.

█ As discussed above, the failure to send notice or copies of the corrected sentencing order to the Department of Correction or to Beliles did not result in a tangible detriment or concrete injury to Beliles' substantive rights. Therefore, Beliles has not demonstrated prejudice sufficient to establish his entitlement to post-conviction relief. *See White v. State,* 497 N.E.2d at 905.[1]

█ Finally, Beliles argues that the trial court failed to comply with the procedures prescribed by I.C. 35-38-1-15-17 (shock probation). This statute authorizes the trial court to reduce or suspend a previously imposed sentence within 365 days of the defendant's imprisonment. The *nunc pro tunc* entry correcting Beliles' sentence did not reduce or suspend his sentence. Therefore, I.C. 35-38-1-15-17 has no application here.

## II.

### *Judicial Authority to Correct Sentencing Order*

█ Beliles asserts that the successor, sitting trial judge who entered the corrected

---

1. The frustration of Beliles' and his family's expectations is regrettable. Nothing in this decision should be interpreted as condoning the failure of providing Beliles and the Department of Correction with notice of the corrected sentencing order or as relaxing the requirements of prompt action on the part of the State in discharging its duties in criminal cases. *See Woods,* 583 N.E.2d at 1213.

abstract of judgment in 1993 lacked the judicial authority to do so. Beliles argues that only the Judge Pro Tem who had presided over Beliles' sentencing had the authority to correct the abstract of judgment and certify it to the Department of Correction. Beliles relies on I.C. 35–38–3–2(a) which provides:

> When a convicted person is sentenced to imprisonment, the *court* shall, without delay, certify, under the seal of the court, copies of the judgment of conviction and sentence to the receiving authority.

(Emphasis ours).

The State has failed to respond to this issue. Therefore, Beliles need only show prima facie error to obtain reversal. *See Steward v. State*, 636 N.E.2d 143, 148 (Ind. Ct.App.1994), *affirmed*, 652 N.E.2d 490. However, the prima facie rule is a rule of convenience and we may, in our discretion, decide the case on the merits. *Id.*

The term "court" as employed in Ind.Code 33–4–7–8 provides that only "the *court* shall enter the final order" (emphasis ours) has been interpreted to include the regular judge, a judge pro tem or a special judge. *Schwindt v. State*, 596 N.E.2d 936, 937 n. 2 (Ind.Ct.App.1992). Beliles has not put forward any basis which would undermine the authority of the regular, sitting judge to preside over the trial court in 1993. Therefore, while the delay in the trial court's certification of the corrected judgment to the Department of Correction is regrettable, Beliles has not carried his burden of establishing his entitlement to post-conviction relief.

Judgment affirmed.

BAKER and BARTEAU, JJ., concur.