COLORADO COURT OF APPEALS                                    **2017COA49**

Court of Appeals No. 14CA0339
Mesa County District Court No. 00CR907
Honorable Charles A. Buss, Judge
Honorable Brian J. Flynn, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

David William Wiseman,

Defendant-Appellant.

SENTENCE VACATED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE DAILEY
J. Jones, J., concurs
Berger, J., specially concurs

Announced April 20, 2017

Cynthia H. Coffman, Attorney General, Brock J. Swanson, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Jason C. Middleton,
Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, David William Wiseman, appeals the district court's order vacating his original sentence and imposing a new sentence.  We vacate the new sentence and remand for resentencing.

## I.    Background

¶ 2    As pertinent here, Wiseman was charged with acts committed between August 31, 1999, and July 31, 2000, constituting sexual assault on a child under the age of fifteen by one in a position of trust.  After a trial to a jury held in 2001, he was convicted of two counts of sexual assault on a child under the age of fifteen by one in a position of trust (counts one and three), sexual assault on a child under the age of fifteen by one in a position of trust - pattern of abuse (count seven), and sexual assault on a child under the age of fifteen - pattern of abuse (count eight).  Count one concerned a "lotion incident," and count three concerned a "condom incident." Those same two incidents were found by the jury to be the same two predicate acts constituting the patterns of abuse found in connection with counts seven and eight.[1]

---

[1] Wiseman had been charged in connection with yet another incident ("the breast touching incident when Mom was present"),

¶ 3     At the 2002 sentencing hearing, the district court sentenced Wiseman to the custody of the Department of Corrections (DOC) on

- count one, for six years;

- count three, for eight years, consecutive to count one;

- count seven, for fifteen years, concurrent to the sentences imposed on counts one and three; and

- count eight, for fifteen years, consecutive to counts one and three.

¶ 4     The sentence reflected in a minute order and the mittimus initialed by the court, however, differed from that which was orally pronounced, in the following respects:

- for count one, the sentence was eight (not six) years; and

- there was no indication whether the sentences imposed in connection with counts seven and eight would be served concurrently or consecutively to one another or to the other sentences in the case.

¶ 5     A division of this court affirmed Wiseman's convictions on direct appeal. *People v. Wiseman*, (Colo. App. No. 02CA0496, Apr.

---

but the jury acquitted him of this charge and rejected it as a basis for its pattern of abuse findings.

1, 2004) (not published pursuant to C.A.R. 35(f)). In 2013, while Wiseman was incarcerated in the DOC, the district court, at the DOC's request, reviewed his sentence and determined that consecutive terms were mandated by law on all four of his sentences:

> The sentence imposed for count seven should have been ordered consecutive to the sentences imposed for counts one and three (count one was ordered consecutive to count three) and the sentence imposed for count eight should have been ordered consecutive to the sentences imposed for counts, one, three, and seven.
>
> Accordingly, it is ORDERED that an Amended Mittimus be issued consistent with this Order.

¶ 6     The effect of the court's order was to increase Wiseman's sentence to forty-six years imprisonment.

¶ 7     The district court denied Wiseman's motion to reconsider and vacate its order and the corresponding amended mittimus.

## II.    Analysis

¶ 8     Wiseman contends that he was subject to, at most, two convictions and sentences in this case, and that the district court erred in determining that consecutive sentences were statutorily required. We agree with both contentions, but, with respect to the

first one, for reasons somewhat different from those argued by Wiseman.

### *A. The Number of Convictions and Sentences*

¶ 9    The district court could not impose four consecutive sentences because it could not impose four sentences; it could impose only two.

¶ 10    As we see it, the number of sentences that could be entered in the case turns on whether the pattern of abuse counts (seven and eight)

- were simply sentence enhancers, *People v. Simon*, 266 P.3d 1099, 1107-08 (Colo. 2011) (holding that the pattern of abuse statutory provisions, sections 18-3-405(2)(d) and 18-3-405.3(2)(b), C.R.S. 2016,[2] "do not establish separate, overall course of conduct 'pattern' offenses," but "authorize greater punishment" (or sentence enhancement) "for each incident of sexual assault on a child, or sexual assault on a child by one in a position of trust, where '[t]he actor commits the offense

---

[2]  The relevant statutory language is the same as in the versions of sections 18-3-405 and 18-3-405.3, C.R.S. 1999, that were in effect in 1999 and 2000, when the offenses were alleged to have occurred.

*as a part of* a pattern of sexual abuse.'") (alteration in

original) (citations omitted); or

- were meant to encompass additional substantive offenses
as well, *see, e.g., People v. Melillo*, 25 P.3d 769, 777
(Colo. 2001).

¶ 11    If the former was the case, then only the two convictions for counts one and three, with enhanced sentences for each, could be entered; if the latter was the case, then four convictions and sentences could be entered. *See People v. Torrez*, 2013 COA 37, ¶ 23 ("Trial courts may not enter a separate conviction or sentence on a count that is only a sentence enhancer. . . . But 'a single count may charge both a crime *and* a sentence enhancer.'" (quoting *Melillo*, 25 P.3d at 777)).

¶ 12    Nothing in the charging document indicates that counts seven and eight were intended to include one or more substantive offenses in addition to those charged in counts one and three. And, the special interrogatory given in connection with the pattern of abuse verdict forms identified only the lotion and condom incidents as the predicate acts establishing the patterns. Because those incidents were also the subject of separate charges (i.e., counts one and

three) and verdicts, counts seven and eight did not encompass "additional" substantive crimes for which one or more separate sentences could be imposed. They acted, then, as mere sentence enhancers for counts one and three.

¶ 13    Notably, identical acts supported the verdicts for each pattern of abuse count. There was, then, but one pattern of abuse, and the court should have applied only the applicable one (i.e., sexual assault on a child by one in a position of trust - pattern of abuse). That enhancer, in turn, would apply to each of the sentences for the lotion and condom incidents (counts one and three), elevating each from a class 4 felony to a class 3 felony. §§ 18-3-405(2)(d), -405.3(2)(b), C.R.S. 2016.[3]

¶ 14    Consequently, in entering separate convictions and sentences for counts seven and eight, the district court erred.

### B.    Consecutive Sentencing

¶ 15    The district court also erred in concluding that it was statutorily required to impose consecutive sentences.

---

[3] The pattern of abuse enhancer could be applied to each of the substantive counts without offending double jeopardy principles. *People v. Simon*, 266 P.3d 1099, 1109-10 (Colo. 2011).

¶ 16    Generally, a trial court has discretion to impose either consecutive or concurrent sentences, except when the offenses charged are supported by "identical evidence," in which case concurrent sentencing is required under section 18-1-408(3), C.R.S. 2016.  *Juhl v. People*, 172 P.3d 896, 899 (Colo. 2007).

¶ 17    In some instances, however, consecutive sentencing is required by statute.  *See* § 16-11-309(1)(a), C.R.S. 1999 (providing, as pertinent here, that "[a] person convicted of two or more separate crimes of violence *arising out of the same incident* shall be sentenced for such crimes so that sentences are served consecutively rather than concurrently") (emphasis added);[4] § 16-13-804(5)(a), C.R.S. 1999 (requiring that any sentence for a sex offense be served consecutively to the sentences for any "additional crimes *arising out of the same incident* as the sex offense") (emphasis added).[5]

¶ 18    Here, Wiseman's convictions were not supported by identical evidence and arose out of different incidents.  Under the

---

[4] This statute has since been repealed and reenacted at section 18-1.3-406, C.R.S. 2016.

[5] This statute has since been repealed and reenacted at section 18-1.3-1004, C.R.S. 2016.

7

circumstances, Wiseman was subject to concurrent or consecutive sentencing, in the court's discretion.

## C. Remedy

¶ 19 Wiseman requests that the case be remanded for reinstatement of the original judgment of conviction and sentences entered in the case. In addition to the fact that separate sentences could not be imposed on counts seven and eight (i.e., the pattern of abuse sentence enhancement counts), however, it has come to our attention that re-imposing determinate sentences[6] here would be "illegal."

¶ 20 Citing *People v. Gallegos*, 764 P.2d 76 (Colo. 1988), Wiseman asserts that we should not address the issue because the People never objected to the determinate nature of either the original or revised sentences and never filed a Crim. P. 35(a) motion attacking the legality of a determinate sentence. In *Gallegos*, the People challenged on appeal whether the trial court was required by statute to sentence the defendant beyond the presumptive range when the defendant was convicted of possession of contraband

---

[6] "Determinate" sentencing encompasses sentencing a person for a specific, fixed period of time.

while in a correctional institution. The supreme court declined to consider the merits of the People's appeal because they had failed to preserve the issue either by contemporaneously objecting at the sentencing hearing or by requesting the trial court, pursuant to Crim. P. 35(a), to correct an illegal sentence.

¶ 21   Subsequently, however, the supreme court recognized that "[a]llegations that a particular sentence is void or illegal require inquiry into the subject matter jurisdiction of the sentencing court and may not be waived." *Downing v. People*, 895 P.2d 1046, 1050 (Colo. 1995). To be sure, it was the defendant, not the People, who was asserting the illegality of a sentence for the first time on appeal in *Downing. Id.* But that does not matter. The prosecution too can request a correction of an illegal sentence, *People v. White*, 179 P.3d 58, 61 (Colo. App. 2007), even (because the issue involves a kind of jurisdictional defect) for the first time on appeal. *See People v. Anaya*, 894 P.2d 28, 31 (Colo. App. 1994) (People may challenge an illegal sentence for the first time on appeal); *see* Crim. P. 35(a) ("The court may correct a sentence that was not authorized by law or that

was imposed without jurisdiction *at any time . . . .*") (emphasis added).[7]

¶ 22     Turning to the merits of the issue, an "illegal" sentence is one that is "inconsistent with the statutory scheme outlined by the legislature" or lying "within the range contemplated by statute but . . . otherwise imposed in excess of the court's subject matter jurisdiction." *People v. Wenzinger*, 155 P.3d 415, 418 (Colo. App. 2006).  "The legality of a sentence is a question of law that we review de novo." *People v. Bassford*, 2014 COA 15, ¶ 20. Wiseman's crimes were sex crimes committed after November 1, 1998, and, as such, they were punishable by indeterminate sentencing under the Colorado Sex Offender Lifetime Supervision Act of 1998 (SOLSA).  *See* §§ 16-13-801 to -812, C.R.S. 1999.[8] Under SOLSA, courts must sentence sex offenders to prison "for an indeterminate term of at least the minimum of the presumptive

---

[7]  In *People v. Wenzinger*, 155 P.3d 415 (Colo. App. 2006), the division recognized that the terminology presently found in Crim. P. 35(a) "merely codifie[d] case law defining 'illegal sentence.'" *Id.* at 418.

[8]  SOLSA has since been repealed and reenacted at sections 18-1.3-1001 to -1012, C.R.S. 2016.

10

range specified in section 18-1-105, C.R.S. [1999], for the level of offense committed and a maximum of the sex offender's natural life." § 16-13-804(1)(a), C.R.S. 1999.[9]

¶ 23    Consequently, under SOLSA, Wiseman had to be sentenced for each conviction to an indeterminate sentence having a minimum term of a certain number of years and a maximum term of life imprisonment.

¶ 24    Because Wiseman's original and revised sentences were both illegal, a remand for the imposition of a "legal" indeterminate sentence under SOLSA is required. *See Bassford*, ¶ 29.

---

[9] If the sex offender committed a sex offense that constitutes a crime of violence, courts must sentence offenders to "at least the midpoint in the presumptive range for the level of offense committed." § 16-13-804(1)(b), C.R.S. 1999 (now § 18-1.3-1004(1)(b), C.R.S. 2016) (crime of violence sentencing for sex offenders). In any event, the minimum term of a sentence imposed under SOLSA may be as high as twice the maximum of the presumptive range for the class of felony of which a defendant was convicted. *Vensor v. People*, 151 P.3d 1274, 1279 (Colo. 2007).

Sexual assault on a child while in a position of trust as part of a pattern of abuse is a per se crime of violence. *Chavez v. People*, 2015 CO 62, ¶ 16.

### D. *Wiseman's Objections to Indeterminate Sentencing*

¶ 25    Wiseman objects to the imposition of yet another (but this time legal) sentence — particularly one that could expose him to the potential of serving life in prison. More specifically, he asserts that the imposition of an indeterminate sentence at this point, over fifteen years after he was initially sentenced in the case, would violate double jeopardy, due process, laches, speedy sentencing, and cruel and unusual punishment principles. We disagree.

### 1. *Double Jeopardy*

¶ 26    "[D]ouble jeopardy does not bar the imposition of an increased sentence if the defendant lacked a legitimate expectation of finality in the sentence." *Romero v. People*, 179 P.3d 984, 989 (Colo. 2007).

¶ 27    "A defendant can have no legitimate expectation of finality in a sentence that, by statute, is subject to further review and revision." *People v. Castellano*, 209 P.3d 1208, 1209 (Colo. App. 2009) (alteration omitted) (quoting *People v. Chavez*, 32 P.3d 613, 614 (Colo. App. 2001)).

¶ 28    Because an illegal sentence is correctable "at any time," Crim. P. 35(a), and "every person is generally presumed to know the law," *People v. Hayward*, 55 P.3d 803, 806 (Colo. App. 2002), Wiseman

12

could have had no legitimate expectation of finality in his illegal sentence. *See Jones v. Thomas*, 491 U.S. 376, 395 (1989) ("[T]he defendant could not argue that his *legitimate* expectation of finality in the original sentence had been violated, because he was charged with knowledge that the court lacked statutory authority to impose the subminimum sentence in the first instance."); *United States v. Rourke*, 984 F.2d 1063, 1066 & n.3 (10th Cir. 1992) (a defendant never has a legitimate expectation of finality in an illegal sentence because it is always subject to modification); *United States v. Kane*, 876 F.2d 734, 737 (9th Cir. 1989) ("Generally, a defendant can acquire no expectation of finality in an illegal sentence . . . If such illegality exists, a defendant is charged with knowledge that it can be corrected under Fed. R. Crim. P. 35.") (citations omitted).

¶ 29    Because Wiseman was put on notice by the statute that his offense would be subject to an indeterminate sentence, he lacked a legitimate expectation of finality in his original sentence. Thus, correcting the illegal sentence to reflect that it is indeterminate does not violate double jeopardy principles. *See Bassford*, ¶ 29 ("Where an illegal sentence had been imposed, a legal sentence generally

13

may be imposed in its stead without running afoul of double jeopardy.").

¶ 30    In so concluding, we necessarily reject, as misplaced, Wiseman's reliance on *Commonwealth v. Selavka*, 14 N.E.3d 933 (Mass. 2014), for a contrary result. In *Selavka*, the Massachusetts Supreme Judicial Court held that a year-long delay in imposing a statutorily required GPS-monitoring condition of probation violated double jeopardy principles. The court based its decision, however, largely on (1) due process "delay" principles articulated in two federal cases; and (2) its conclusion that a sentence should be considered final and not subject to change, consistent with a rule of criminal procedure, sixty days after sentencing. As we explain in the next section, the rationale of the two federal cases — *Breest v. Helgemoe*, 579 F.2d 95, 101 (1st Cir. 1978), and *United States v. Lundien*, 769 F.2d 981 (4th Cir. 1985) — has been undermined by subsequent case law. And our rules impose no time limit within which either the defendant or the prosecution may challenge an illegal sentence.

## 2.    *Due Process*

¶ 31    Wiseman also argues that substantive due process bars his resentencing.  To support his due process claim, he relies principally on the decisions of the First and Fourth Circuit Courts of Appeals in *Breest*, 579 F.2d at 101 ("[T]he power of a sentencing court to correct even a statutorily invalid sentence must be subject to some temporal limit. . . .  After a substantial period of time, . . . it might be fundamentally unfair, and thus violative of due process for a court to alter even an illegal sentence in a way which frustrates a prisoner's expectations by postponing his parole eligibility or release date far beyond that originally set."); *Lundien*, 769 F.2d at 987 (an enforceable expectation of finality can "crystallize[]" after enough time, even in an illegal sentence); and *DeWitt v. Ventetoulo*, 6 F.3d 32, 34 (1st Cir. 1993) ("[D]ue process must impose some outer limit on the power to revise sentences upward after the fact.").

¶ 32    Wiseman's reliance on those cases, however, is misplaced:

> All of those opinions pre-date, and none of them apply, the substantive due process analysis laid out in [*Washington v. Glucksberg*, 521 U.S. 702 (1997),] and [*County of Sacramento v. Lewis*, 523 U.S. 833 (1998)].  All of those opinions discuss due process only in a general sense.  And that discussion appears

15

only as dicta mere speculation in *Breest* and *Lundien*. The First Circuit found a due process violation in *DeWitt*, but on facts so unusual and with no relevance to defendant's situation here that it concluded, "[i]n sum, this case is the very rare exception to the general rule that courts can after sentence, revise sentences upward to correct errors." Therefore, none of the opinions which defendant cites support his underlying contention that his asserted liberty interest is specially protected under the Due Process Clause.

*People v. Thompson*, 880 N.Y.S.2d 875, 2009 WL 348370, at *7 (N.Y. Sup. Ct. 2009) (unpublished table decision) (citations and footnotes omitted); *see Hawkins v. Freeman*, 195 F.3d 732, 748-49 (4th Cir. 1999) (en banc) (declining to follow either *Lundien* or *DeWitt*, both of which had relied on *Breest*, and noting that a right based on a claimant's "'crystallized expectations' . . . has been specifically rejected by the Supreme Court as a source of substantive due process right in related contexts"); *People v. Lingle*, 949 N.E.2d 952, 957 (N.Y. 2011) (*Breest*, *Lundien*, and *DeWitt* "generally apply a multi-factor test to determine when a defendant's expectation that his sentence will remain unchanged has 'crystallized' such that resentencing would offend substantive due process. But subsequent decisions by the very same courts have largely

16

abandoned the multi-factor test in favor of a 'shocks the conscience' standard.") (citations omitted); *see also Littlefield v. Caton*, 856 F.2d 344, 348 (1st Cir. 1988) ("While we do not minimize the strain which accompanies a prisoner's dashed expectations in circumstances like these, particularly when the string is played out over a long period of years, we have made clear that misdirection of this sort must 'involve[] prejudice and harm beyond frustrated expectations' to be constitutionally redressable.") (alteration in original) (citation omitted); *Beliles v. State*, 663 N.E.2d 1168, 1172 (Ind. Ct. App. 1996) ("[A] prisoner's due process rights are not violated merely by the dashed hopes attendant in the correction of a sentence which delays the prisoner's expected release date.").

¶ 33 Because Wiseman has no fundamental right to avoid serving a lawful sentence of which he should have been aware, and because it was an executive agency (i.e., the DOC) that sought resentencing, the standard for assessing a substantive due process claim is whether the governmental action was "so egregious, so outrageous,

that it may fairly be said to shock the contemporary conscience."

*Lewis*, 523 U.S. at 847 n.8.[10]

¶ 34    In applying this standard, we find the First Circuit Court of Appeals' decision in *Gonzalez-Fuentes v. Molina*, 607 F.3d 864 (1st Cir. 2010), instructive.  In that case, the court noted that "[t]he shock-the-conscience test is an extremely demanding one, and challenges analyzed under it rarely succeed." *Id.* at 885.  The Commonwealth of Puerto Rico had erroneously admitted some of its prisoners into an electronic supervision program (ESP).  *Id.* at 871.  When, a decade later, it re-evaluated its position and realized that it had erred, it attempted to reincarcerate the affected individuals — many of whom "had spent multiple years (some as many as five) living in their homes rather than behind prison walls" and were without any "reason to doubt that that arrangement would be permanent so long as they abided by the terms of the program." *Id.*

---

[10] Citing a concurring opinion in *Betterman v. Montana*, 578 U.S. ___, ___, 136 S. Ct. 1609, 1619 (2016) (Sotomayor, J., concurring), Wiseman insists that the due process test for delayed sentencing is, indeed, the four-part test from *Barker v. Wingo*, 407 U.S. 514 (1972), which is used to determine Sixth Amendment speedy trial claims.  A majority of the Court has, however, not adopted that test, and the federal circuit courts of appeal have not applied it in this context.

at 881-82.  According to those individuals, they "were blindsided by the new administration's about-face" view of the law.  *Id.* at 882.

¶ 35  The court recognized that "[t]he impact of reincarceration on the [individuals was], of course, substantial.  By waiting until 2005, the Commonwealth did more than squash a mere expectation of liberty.  It set about actually undoing the liberty itself."  *Id.*

¶ 36  But, the court recognized, "[t]he Commonwealth's executive branch necessarily has a fundamental interest in fidelity to legislative directives" and "an interest in avoiding 'the precedential risk of acquiescing in irregular enforcement of state law.'"  *Id.* at 882-83 (quoting *Hawkins*, 195 F.3d at 746).  And "there [was] no doubt as to the thoroughness of Puerto Rico's plans to reimprison every individual participating in the ESP in violation of Law 49.  Puerto Rico is engaging in precisely the sort of wide-scale efforts that we emphasized were lacking in *DeWitt*."  *Id.* at 884.

¶ 37  The court could "take no issue with the district court's rebuke of the Commonwealth for cavalierly disregarding the [affected individuals'] dignity."  *Id.* at 885.  Nonetheless, given the Commonwealth's countervailing interests, the decision to

19

reimprison the individuals following their time participating in ESP did not shock the conscience of the court. *Id.* at 884.

¶ 38     The State of Colorado has the same legitimate interests at stake here as were identified in *Gonzalez-Fuentes*: the correct application of its laws and avoiding the precedential risk of irregular enforcement of its laws.[11]  And the record reflects that Wiseman's case was brought to the court's attention in 2013 as part of a DOC

---

[11] These were important interests in enacting SOLSA:

> The general assembly hereby finds that the majority of persons who commit sex offenses, if incarcerated or supervised without treatment, will continue to present a danger to the public when released from incarceration and supervision.  The general assembly also finds that keeping all sex offenders in lifetime incarceration imposes an unacceptably high cost in both state dollars and loss of human potential.  The general assembly further finds that some sex offenders respond well to treatment and can function as safe, responsible, and contributing members of society, so long as they receive treatment and supervision.  The general assembly therefore declares that a program under which sex offenders may receive treatment and supervision for the rest of their lives, if necessary, is necessary for the safety, health, and welfare of the state.

§ 16-13-801, C.R.S. 1999 (repealed and reenacted at section 18-1.3-1001, C.R.S. 2016).

20

and State Court Administrator's Office initiative to identify individuals with potentially illegal concurrent sentences when consecutive sentences were mandated by statute.

¶ 39     The case is, in our view, resolved on the same grounds as those in *Gonzalez-Fuentes*:

> [S]ubstantive due process is not "a font of tort law," and limits executive action only when that action "was infected or driven by something much worse — more blameworthy — than mere negligence, or lack of proper compassion, or sense of fairness, or than might invoke common law principles of estoppel or fair criminal procedure to hold the state to its error." Because that condition has not been met for [Wiseman], [his] substantive due process claim must fail.

*Id.* at 885-86 (first quoting *Lewis*, 523 U.S. at 847 n.8; then quoting *Hawkins*, 195 F.3d at 746); *see also, e.g., Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 661 (3d Cir. 2011) (an individual's deep disappointment in belatedly learning of the upward correction "is certainly regrettable, but that does not make the correction conscience-shocking").

### 3.    Laches

¶ 40    Wiseman contends that the application of the doctrine of laches bars resentencing him to an indeterminate sentence fifteen years after he was originally sentenced in the case.  We disagree.

¶ 41    "Laches is an equitable doctrine that may be asserted as a defense when a party's unconscionable delay in enforcing its rights has prejudiced the party against whom relief is sought."  *White*, 179 P.3d at 61.  No case in Colorado, however, has held that the doctrine of laches applies in the context of a Crim. P. 35(a) motion to correct an illegal sentence.

¶ 42    The Alaska Court of Appeals, while sympathetic to a defendant's plight in this situation, nonetheless rejected the applicability of the doctrine in this context:

> A defendant's rehabilitation requires, *inter alia,* that he accept the court's sentence. Subsequent tampering with that sentence, however justified legally, may leave the defendant with an understandable sense of unfairness, jeopardizing rehabilitative efforts. We believe however, that on balance, correction of [the defendant's] sentence even though delayed, must be allowed in order to carry out the legislative purpose in establishing minimum sentences and to preclude other defendants from asserting a vested right in an illegal sentence.  Defendants

and their counsel should not be encouraged to remain silent while judges and prosecutors negligently cooperate in the imposition of an illegal sentence. In order to ensure that the law will be carried out, and that judicial negligence will not result in disparate and unequal sentencing, we exercise our authority and hold that the sentence imposed upon [the defendant] was illegal.

*State v. Price*, 715 P.2d 1183, 1186 (Alaska Ct. App. 1986).

¶ 43    The Tenth Circuit Court of Appeals has also rejected the applicability of the doctrine in this context:

To follow the argument of the defendants would be to affirm the imposition of illegal sentences and to violate our duty to correct illegal sentences whenever that illegality is discovered by the court.

A trial court may correct an invalid sentence which is in itself a nullity at any time. The fact that the government may fail to exert due diligence in presenting this issue to the trial court may not prevent the trial court from fulfilling its judicial obligations. The doctrine of laches is an equitable remedy which is applied to promote justice. Needless to say, justice is not fostered by preventing the court from correcting an illegal sentence. We hold, therefore, that the doctrine of laches is inapplicable.

*United States v. Romero*, 642 F.2d 392, 396 (10th Cir. 1981) (citations omitted); *see, e.g., Greco v. State*, 48 A.3d 816, 831 (Md.

2012) (A laches argument "is not available in the context of a motion to correct an illegal sentence because an illegal sentence can be corrected 'at any time.'") (citation omitted); *Ferguson v. State*, 381 P.3d 611, 2012 WL 4801641, at *1 n.3 (Nev. 2012) (unpublished table decision) ("[T]he district court erroneously denied the motion as procedurally barred pursuant to laches.  To the extent that the motion was a motion to modify or correct an illegal sentence, laches does not apply.").

¶ 44    Persuaded by these authorities, we conclude that the doctrine of laches would not bar the imposition of a legal, indeterminate sentence at this point.

### 4.    *Speedy Sentencing*

¶ 45    We find unpersuasive Wiseman's contention that resentencing him to an indeterminate sentence now would violate a constitutional right to speedy sentencing and Crim. P. 32(b).

¶ 46    Wiseman had initially advanced the argument that resentencing him now would violate a federal constitutional right to speedy sentencing.  But he has since retracted the argument, in light of *Betterman v. Montana*, 578 U.S. ___, 136 S. Ct. 1609 (2016), which rejected the existence of such a federal constitutional right.

¶ 47    We decline Wiseman's invitation to recognize a separate state constitutional right to speedy sentencing arising out of our state speedy trial guarantee. *See* Colo. Const. art. II, § 16. No such separate right has been identified by either the supreme court or this court. And, "[i]n the past, [the supreme court has] generally declined to construe the state constitution as imposing . . . greater restrictions [than the Federal Constitution] in the absence of textual differences or some local circumstance or historical justification for doing so." *Curious Theatre Co. v. Colo. Dep't of Pub. Health & Env't,* 220 P.3d 544, 551 (Colo. 2009).

¶ 48    Wiseman presents no argument why the state constitutional provision should be interpreted differently from its federal constitutional counterpart. Consequently, we decline to address the assertion. *See People v. Mendoza,* 313 P.3d 637, 645 (Colo. App. 2011) ("[The defendant] does not support his assertion with any meaningful argument. Consequently, we do not address it."); *People v. Wallin,* 167 P.3d 183, 187 (Colo. App. 2007) (declining to address arguments presented in a "perfunctory or conclusory manner"); *see also United States v. Zannino,* 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner,

unaccompanied by some effort at developed argumentation, are deemed waived.").

¶ 49    Finally, we perceive no basis upon which Wiseman may assert a violation of Crim. P. 32(b). That provision requires that "[s]entence shall be imposed without unreasonable delay." Wiseman was resentenced immediately after the district court vacated his prior sentence, and we cannot presume that he would be subjected to unreasonable delay following a remand from this court for resentencing.

### 5.    Cruel and Unusual Punishment

¶ 50    Finally, we disagree with Wiseman that the imposition of a legal, indeterminate sentence at this point would constitute cruel and unusual punishment within the meaning of the Eighth Amendment to the United States Constitution.

¶ 51    Ordinarily, the imposition of an indeterminate sentence for a sex crime does not constitute cruel and unusual punishment. *E.g.*, *Torrez*, ¶ 88; *People v. Dash*, 104 P.3d 286, 293 (Colo. App. 2004). But, Wiseman says:

> Imposing indeterminate life sentences . . . and
> requiring [Wiseman] to essentially start over in
> terms of the requirements necessary for

release on parole, after already having served [sixteen] years in DOC, and where he would have completed serving the determinate sentences originally imposed and been released into the community, would be unnecessarily cruel and barbaric. Arbitrarily and unnecessarily inflicting such psychological and emotional damage upon a criminal defendant, due to the negligence of the prosecution and court system in imposing or correcting his sentence at a much earlier date, constitutes unnecessary cruel and unusual punishment.

¶ 52    For two reasons, we are not persuaded. First, Wiseman's premise that he had an expectation that he would be immediately released on parole is wrong. He appears to view his initial sentence as having been for only sixteen years. But that figure is based on the sentence reflected on the initial mittimus, and it assumes, of course, that the mittimus's silence with respect to counts seven and eight would require concurrent sentencing on those counts. However, "[w]hat the judge says in sentencing a defendant takes precedence over the written judgment." *United States v. Cephus*, 684 F.3d 703, 709 (7th Cir. 2012); *accord People v. Rockne*, 2012 COA 198, ¶ 23 (resolving any conflict in the record regarding sentencing in favor of the court's oral pronouncement); *People v. Young*, 894 P.2d 19, 20 (Colo. App. 1994) (directing court to correct

27

mittimus consistent with its earlier oral ruling). What the court said at the 2002 sentencing produced an aggregate sentence of twenty-nine years. Whether assessed from 2013 (when he was resentenced) or even now, Wiseman had and has a considerable amount of time yet to serve before he could enjoy an "unqualified" right to immediate release on parole under his initial sentence.

¶ 53 Second, a cruel and unusual punishment claim cannot be predicated on the negligence of executive agencies or the court system in failing to impose or correct a sentence at a much earlier date. *Farmer v. Brennan*, 511 U.S. 825, 835, 838 (1994).

¶ 54 Consequently, Wiseman is not entitled to relief on this ground.

### III. Conclusion

¶ 55 We vacate the sentence imposed by the district court and remand with instructions to resentence Wiseman to a legal, indeterminate sentence under SOLSA consistent with the views expressed in this opinion.

JUDGE J. JONES concurs.

JUDGE BERGER specially concurs.

JUDGE BERGER, specially concurring.

¶ 56 The court's rejection of Wiseman's double jeopardy, speedy sentencing, and Eighth Amendment claims is fully supported and required by controlling precedent. I also agree that the Supreme Court's modern substantive due process jurisprudence requires us to reject Wiseman's substantive due process claim. *See Cty. of Sacramento v. Lewis*, 523 U.S. 833 (1998); *Washington v. Glucksberg*, 521 U.S. 702 (1997).

¶ 57 The court's opinion correctly notes that these Supreme Court cases cast serious doubt on the continued validity of earlier decisions by the Fourth Circuit in *United States v. Lundien*, 769 F.2d 981 (4th Cir. 1985), and by the First Circuit in *Breest v. Helgemoe*, 579 F.2d 95, 101 (1st Cir. 1978), and *DeWitt v. Ventetoulo*, 6 F.3d 32, 34 (1st Cir. 1993), cases relied on by Wiseman.

¶ 58 I write separately, however, to express my view that neither *Glucksberg* nor *Lewis* categorically precludes a successful substantive due process claim when a prisoner is erroneously released from custody and then later is reincarcerated when the error is discovered.

¶ 59    Years after the Supreme Court's cases that redefined and
limited substantive due process claims, a division of this court
recognized that "a defendant may have developed an expectation of
finality regarding the sentence or a portion thereof." *People v.
Bassford*, 2014 COA 15, ¶ 33;[1] *cf. People v. Castellano*, 209 P.3d
1208, 1209-10 (Colo. App. 2009) (addressing an expectation of
finality in a sentence but noting that "[a] defendant can have no
legitimate expectation of finality in a sentence that, by statute, is
subject to further review and revision") (alteration in original)
(citation omitted).

¶ 60    Other courts also have concluded, post *Glucksberg* and *Lewis*,
that such an expectation of finality might require enforcement of a
previously imposed, yet unlawful, sentence.  In *United States v.
Watkins*, 147 F.3d 1294, 1298 n.5 (11th Cir. 1998), the Eleventh
Circuit stated: "We are mindful that a defendant's due process
rights may be violated 'when a sentence is enhanced after the
defendant has served so much of his sentence that his expectations

---

[1] Although *People v. Bassford*, 2014 COA 15, ¶ 50 n.6, recognized
such an expectation of finality, because the argument was not
properly developed in that case, the division did not further analyze
either those expectations or when or how the expectations would be
entitled to enforcement.

as to its finality have crystallized and it would be fundamentally unfair to defeat them.'" (Citation omitted.) *See also Hawkins v. Freeman*, 195 F.3d 732, 751 (4th Cir. 1999) (Murnaghan, J., dissenting); *United States v. Davis*, 112 F.3d 118, 123 (3d Cir. 1997); *United States v. Tolson*, 935 F. Supp. 17, 21 (D.D.C. 1996).

¶ 61 A substantive due process claim for enforcement of an original, but unlawful, sentence is strongest when the defendant has been released from custody and has spent a substantial amount of time at liberty. *See Freeman*, 195 F.3d at 751 (Murnaghan, J., dissenting). Because by definition no reincarceration results when a defendant is resentenced while still in custody, I agree with the court that it is virtually impossible to meet the "shocks the conscience" test prescribed by the Supreme Court in *Lewis*, 523 U.S. at 847 n.8, when an illegal sentence is corrected while the defendant remains in custody.

¶ 62 Wiseman was never released from custody. He was sentenced in 2002 and he has remained in state custody since that date. Though his expectations (which for these purposes I assume are bona fide) of a determinate sentence will be seriously frustrated by the imposition of an indeterminate sentence under the Colorado Sex

31

Offender Lifetime Supervision Act of 1998 (SOLSA), his situation is different in kind from that of a prisoner who is erroneously released from custody and spends a substantial amount of time at liberty. I agree with the court that given the enhanced requirements for a substantive due process claim, Wiseman cannot establish a substantive due process violation.

¶ 63 But, depending upon the particular facts, I would not categorically reject a substantive due process claim by a released prisoner who is later reincarcerated. Depending on the facts, an executive branch decision to seek reincarceration may meet the stringent requirements of the "shock the conscience" test and require enforcement of an otherwise illegal sentence originally imposed.